Good morning. Good morning. And may it please the court. Hunter Haney for Leon Gonzalez. I hope to reserve two minutes for rebuttal, and I'll keep an eye on my clock. This appeal concerns the important question of whether First Step Act earned time credits can be applied to reduce a term of supervised release. The FSA's plain text, broader context, and purpose all confirm the answer to that question is yes. The FSA's text, to start, provides that, quote, time credits shall be applied toward time in pre-release custody or supervised release. The most harmonious meaning of this phrase is that Congress has provided a time credit scheme where credits can be earned and then used to fulfill, that is, reduce, the time to be served while in pre-release custody or supervised release, a construction that is consistent with language Congress has used in several other time credit statutes set forth in our briefs. The government focuses, however, exclusively on the word toward, alleging that the use of toward means that credits can only be applied to bring the start of pre-release custody and supervised release closer. But what this does is it plucks one definition out of the dictionary and forces it into this unique statutory context of a credit system. Toward isn't being used in some sort of directional sense here. It is being used in the way that one describes paying toward a debt, dollar for dollar, or here, day for day. Ultimately, the government's gloss defies common sense. The government also provides no example of another time credit statute operating in this way. It fails to consider the meaning of other words in the provision. It treats pre-release custody and supervised release differently, despite their adjacent textual placement, and it renders the words time in superfluous. Now, the government says that its reading treats pre-release custody and supervised release the same because it allows for early entry into both. But the statute actually provides a pretty elaborate time credit scheme, not merely a mechanism for transfer. So the government's argument really ultimately begs the question of why bother having a time credit scheme at all if not to effectuate day for day reductions. It's undisputed that the BOP can effectuate reductions in some respect because that's what the government concedes that the BOP did here when it transferred Gonzalez out of pre-release custody early to supervised release. So ultimately, the government's reading effectively rewrites time in as time before. However, as the court explained in Korotke last year, a decision that Judge Mendoza authored, a statute has to be construed to give full effect to all of its parts in light of context and common sense. And that is what Gonzalez's reading does. So although its textual clarity on this point makes it unnecessary to address, legislative history also supports our position. The FSA was a significant criminal justice bipartisan reform that was designed to incentivize recidivism reduction programming and reverse systemic inequities. And because the FSA is a remedial statute, the time credit framework should be interpreted broadly with due regard to what would maximize programming participation. It bears noting that the House initially passed a version of this statute that did not include any language regarding supervised release. And then the Senate added that language specifically to cover in our position so that time credits could cover reductions in supervised release. Now the government argues that promising reductions in supervised release won't adequately incentivize programming participation. But that is wrong. A reduction in one sentence is undoubtedly a significant incentive to participate in more programming. If the BOP's construction ultimately of this provision is upheld, earned time credits will continue to be untimely applied, which is why we're in this position in the first place. And they will routinely go unused. And one would naturally expect less programming participation. Counsel, can you explain that? What exactly do you mean by that? Because, as the statute recognizes, the premise of this whole time credit program is to incentivize programming participation through providing these time credits. So I think we used the example of the 10-year-old in our brief. Another more adult example would be credit card points. You know, you offer someone points to be used as a credit toward a trip to Hawaii. Let's use the examples that we would face in this circumstance. So let's say someone received, we're not talking about a 10-year-old, but a 10-year sentence. And that person was involved in a couple of programs. And maybe have, is there an incentive under the government's reading for them to participate in additional recidivism programs? I'm sorry, maybe I'm misunderstanding the question, Your Honor. But our position is that the more programming that someone can participate in, the more likely, or sorry, the more time credit incentives that there are available to someone through participation in these programs, the more likely it is ultimately that someone's going to actually participate in those programs. And I realize that, you know, the statute also mandates participation in these programs, of course. But by ultimately putting prisoners in a position where they are not able to use, at least in my client's case, even their credits toward pre-release custody, in many cases, because the BOP is not timely applying the statute, it ultimately sends the message, why participate in these programs? Because I think the end result of the BOP's position is at most one year of credits under 3624 G3 can be applied to reduce time. So at most you have 365 days of credits that you can get. And there is no reason, I think, after that point to actually participate in these programs. Counsel, accepting your argument creates a circuit split with the 11th Circuit, correct? I recognize that theirs is not a published case, but they have interpreted this provision. Right. So Guerriero, the 11th Circuit decision is, of course, as Your Honor mentioned, unpublished. It's sparsely reasoned. It seemingly involved an uncounseled petitioner who didn't raise the arguments that we raise here. It also relied on the Calabrese decision from the Northern District of Ohio, which is flawed for many of the reasons set forth in our briefs. And I would encourage the court to take a look. District court decisions that have gone that way, right? I believe the primary authority it relied on was Calabrese. And several courts have since followed suit. District courts have followed suit and just pretty much adhered to Calabrese without providing much additional reasoning. But I would point, Your Honors, to the recent decision out of the District Court of Connecticut, Rivera-Perez, which very persuasively sort of picks apart the arguments in Calabrese and Guerriero, and shows that Guerriero is not persuasive. So I think given the tremendous stakes of interpreting the statute correctly and the potential broad effects of it, we do think this case and these circumstances call out for departing from Guerriero, as this court did in Williams v. King, departing from out-of-circuit precedent for similar reasons that it wasn't very specifically reasoned. And I think were the court to publish a decision on this issue favorable to Gonzalez, the Eleventh Circuit, of course, wouldn't be bound to disagree with its unpublished decision in Guerriero, and it would be up to them ultimately to create a split with this court's decision. Thank you. Unless the court has any further questions, I'll reserve my remaining time. Thank you. Good morning. Kedar Bhatia for the United States. May it please the court. I want to start with the mechanics of the earned time credits, because I think they're relevant to the government's argument here, and I heard at least some argument from the defense that was also in the reply brief that misstates the way ETCs work and the government's position on it. Under the First Step Act, an inmate can earn earned time credits for completing recidivism reduction programming. When their earned time credits equal the amount of time they have left in custody, those earned time credits go into effect. If the individual has up to 365 days, they can move into supervised release. If they have in excess of 365 days, they're eligible to go into pre-release custody earlier. Pre-release custody is a sort of middle ground between the harshest form of incarceration and supervised release. It's things like home confinement. In this case, defendant was actually already on home confinement due to COVID relief. So in this case, the government's interpretation and the one reached by the vast majority of courts does give full effect to these earned time credits. The credits that an inmate earns by completing these recidivism reduction programs can allow that person to go into pre-release custody earlier. Before the First Step Act, there was a limit of one year. After the First Step Act, it can be any amount of time that the defendant earns through their credits going into pre-release custody. In addition, they can also leave the BOP custody earlier altogether by up to a year based on these credits. Counsel, I guess if you can clarify something for me, because I've looked at the statute, because that's where you want to start, right? You want to start with the language of the statute. And 3632 D4C says, shall be applied toward time in pre-release custody consistent to what you're saying, but it has, importantly and significantly, the additional language of or supervised release. I think if Congress wanted to say just pre-release custody, they would have said that, right? They would have said that we're not talking about giving credit towards supervised release. They would have just not included that. So we have to give those words meaning. And could you explain to me how, in your view, we give those words meaning? Yes, Your Honor. So we are giving those words meaning because the time credits can be used to move a person towards pre-release custody earlier and be used to move them into supervised release earlier. And that's the language of the first sentence, and then it's also read in harmony with the second sentence, which puts that into effect. So it gives meaning to every part of D4C. That seems to be a tortured reading when you look at how Congress used toward, because that's the word that you're focusing on, in another section, and that's 3624. There we're talking about regarding releasing of prisoners. There Congress used, we're talking about good time credits, the time that folks are given. And the way they use towards there is giving that credit towards the time when they are released. Why shouldn't we use that meaning instead of the meaning that you suggest? Your Honor, it's because what Pulsifer, I think Pulsifer put it the best way, when there are two grammatically plausible readings, the court has to look to the context. And in the context you described, Your Honor, with good time credits, Congress could not have been more clear. It was explicit. Good time credits go towards reducing a term of imprisonment. Congress was equally clear with Section 3632G3, where it said supervised release can be reduced by up to, the term of custody can be reduced by up to a year to move someone into supervised release. Here, the first sentence of 3632D4C has to be read in the context of the statute. To read that to reduce any term of supervised release by any amount of unused credits would be to hide an elephant in a mouse hole, and it's really not what Congress intended. So, Your Honor, I take your point about the word towards being used. I think your argument has some force if we look at the application of earned good time credit in the custody setting traditionally. But the first step back seems to change all that, right? And so if it's meant to change all that, then we're looking at a different landscape and maybe it may not feel as intuitively correct to apply earned credit towards supervised release. I'm looking at the plain text of the statute, shall be applied toward time in pre-release custody or supervised release. That doesn't seem to be textually ambiguous in any way, and maybe Congress did mean to change the whole landscape of what we would traditionally think of as to how to apply earned credits while in custody. Because otherwise, under your interpretation, any excess credit just basically goes away and there's no benefit given to defendants who have excess credits, right? So, Your Honor, I'll address the second part first and then I'll go to the text. So as to the unused credits, we do think they have effect. As I mentioned in the ordinary course, when the time credits equal the amount of days left in custody, they either go towards pre-release custody, moving that earlier and expanding the amount of time, which is consistent with the First Step Act, or moving someone out of custody altogether and into supervised release, which is also in line with the First Step Act. In the rare— Mr. Gonzales, what happened to his excess credits? Sure. So in Mr. Gonzales's case, he was already on home confinement for even far longer than the First Step Act would have allowed because of COVID relief. In this case, though, the Bureau of Prisons did admittedly err in not calculating those credits sooner, causing him to not move from home confinement onto supervised release in a timely way. So it was about five months late where he moved from home confinement to supervised release. And in this case, the defendant has availed himself now twice of the remedies that are available to him. In his underlying 2241 petition, he said to Judge Fischer, even if you disagree with my textual reading, please use your equitable powers to reduce my term of supervised release. Judge Fischer considered that and said, I'm not going to use my equitable powers that way. But she did consider it. She ruled on it as part of the decision below. In February of this year, the defendant applied to Judge Snyder, who heard the underlying case, for a 3583 motion to reduce the term of supervised release. Citing the familiar 3553A factors and this over-served time, Judge Snyder just on Monday issued an opinion saying, I'm considering it. I'm crediting what you're saying is true about these over-served credits. But ultimately, under my discretion, I'm going to say it's not the right time to do that. So Judge Snyder denied the petition, denied the motion without prejudice to applying later. Judge Snyder said he had only served one year. In other cases, inmates had served at least two or three years of their supervised release. So she denied it without prejudice to making another application. So these credits do go into effect. They reduce the time of supervised release. And if there is overused time, an inmate can do exactly what this defendant did and apply to the district court. I want to go back to, Your Honor, to ask an earlier textual question. But get it as a matter of an exercise of equitable discretion rather than as a matter of right. That's right, Your Honor. We think it's appropriately used that way, as other credits are under the statute. So if an inmate has excess good time credits, for example, cases have held that those also aren't automatically used. The familiar good time credits don't automatically reduce the term of supervised release. Rather, the court has the discretion to do that on a motion to reduce supervised release. Counsel, if you could address the other part of Judge Wynn's question, which has, I think, some force. And that is, if in fact Congress did change the landscape with regards to the First Step Act and included that language indicating that folks shall be given credit for supervised release, that's Congress's intent, right? That's showing their intent of what they want us to do. We can't sort of second guess what they have chosen within their authority to do. Under your interpretation, we might have to do that. Your Honor, I think, again, the cases I cited earlier are the right ones on ambiguity here. So we cited definitions from the statute. We cited definitions from the dictionary. The defendant cited definitions from the dictionary about towards and how to give credit to time in. I think we have the better of that argument. You'll see that in our briefs. But even if we don't, I think then we're still back in the land of two grammatically plausible interpretations of that first sentence. Defendant, in this case the petitioner, discounts the government for trying to cherry pick words. But the petitioner is relying really just on that first sentence. I think we have the better of the argument. But at a minimum, there are two grammatically plausible readings of that first sentence. The second sentence makes clear what it really means. And then I also want to note 3624G10. Under 3624G10, Congress explicitly expanded the amount of time an inmate can serve in pre-release custody. The petitioner's argument here and the one rejected by the vast majority of courts would treat pre-release custody and supervised release differently. The government's reading them in harmony. The First Step Act expanded the term of pre-release custody. It was an important part of the First Step Act to say that inmates can move into this less restrictive custody earlier. The defendant would read pre-release custody to get shortened, not expanded, which is what Congress was explicit in doing. So to go back to what Your Honor said, I think at a bare minimum, there are two grammatically plausible readings of a few words in the first sentence. But when they're read in context, which is all part of that first threshold decision, what do the words mean? They have to be read in context. We think that it's really unambiguous when you read it in context. All right. You're over time, Counsel. Thank you for your argument. Thank you. Thank you. So unless there are questions specifically about context, we think that our reading of the statute does give full effect to every provision in 3624 and 3632. I do want to make sure I touch upon the points made about the 3583 motion as well. So over the last three years, since April of 2022, Mr. Gonzales has been attempting to pursue every possible avenue for applying his earned time credits. After the government recognized in its brief to this court that equitable considerations of great weight were implicated by Mr. Gonzales' conceded overservice, he exercised his right as soon as he became eligible at the one-year mark for 3583 motion to seek early termination in the interest of justice, citing his over service in part and in the interest of saving this court's resources in this appeal. And despite the government's concessions to the court, it oddly urged the district court not to consider Mr. Gonzales' over service in light of dependency of this appeal. And the district court ultimately found early termination premature and asked for us to come back after this court rendered its decision. So everyone here, I think, appears to agree that the 3583 equitable remedy is a distinct one from the legal claim, as Judge Wen pointed out, being asserted here under the FSA as a consequence of the denied 2241 petition. And so I think this issue remains as ripe as ever for this court's review. Remind me, what's the time period that he's got left? So he has just under four years of supervised release left. So unless this court has any further questions, we would ask the court to reverse and order that Mr. Gonzales' unused time credits be applied to his term of supervised release. Thank you, counsel, to both sides for your very helpful arguments this morning. The matter is submitted.
judges: TASHIMA, NGUYEN, MENDOZA